# United States Court of Appeals
## For the First Circuit

No. 23-1194

UNITED STATES OF AMERICA,

Appellee,

v.

EDGAR CENTARICZKI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Montecalvo, Circuit Judges.

Charles W. Rankin and Rankin & Sultan on brief for appellant.
Darcie N. McElwee, United States Attorney, and Brian S. Kleinbord, Assistant United States Attorney, on brief for appellee.

April 15, 2024

**SELYA**, <u>Circuit Judge</u>.  Defendant-appellant Edgar Centariczki challenges the upwardly variant sentence that followed the revocation of his supervised release.  He argues that his sentence is substantively unreasonable because the district court lacked a sufficiently plausible rationale for imposing an above-guidelines sentence.  Concluding that the appellant's eighteen-month sentence was adequately explained and supported by the record, we affirm.

**I**

We briefly rehearse the relevant facts and travel of the case.  In February of 2021, the appellant pleaded guilty in the District of New Hampshire to aiding and abetting the distribution of methamphetamine and fentanyl.  <u>See</u> 21 U.S.C. § 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a).  He received a sentence of time served (two days) followed by three years of supervised release, which commenced in June of 2021.  Jurisdiction over his case was subsequently transferred to the District of Maine, where the appellant was residing.

Between June and October of 2021, the appellant tested positive several times for marijuana and cocaine.  He also missed several appointments at the U.S. probation office in Portland, Maine.  He attributed these absences variously to conflicts with his work schedule, forgetfulness, sleeping in, and not having money for gas to travel to Portland.  During this interval, he

participated in a substance abuse evaluation and enrolled in an intensive outpatient treatment program.

To address the myriad violations of the appellant's supervised release conditions, the probation officer requested a compliance hearing, which the district court held on October 19, 2021. At the compliance hearing, the court warned the appellant that he would likely face revocation if he continued to violate the terms of his supervised release.

Later that month, the appellant again tested positive for marijuana and cocaine and admitted to using those substances. The probation office subsequently filed a petition for a warrant, alleging that the appellant abridged his conditions of supervised release. The appellant was arrested on November 3.

On January 10, 2022, the district court held a revocation hearing premised on multiple violations to which the appellant admitted. These included violations for drug and alcohol use and failures to report to probation office appointments. Because the appellant was in the process of being evaluated for admission into an in-patient substance use disorder treatment facility, the parties agreed to continue the sentencing portion of the revocation hearing.

At the time of the continued hearing on May 24, the appellant had completed in-patient treatment and was living in a sober house (Enso). The district court adopted the government's

recommendation of a time-served sentence (ninety-nine days) followed by thirty-two months of supervised release.

During the next few months, the appellant continued receiving treatment for substance abuse as well as mental health counseling. During this interim, he consistently tested negative for illicit substances. He also began working with at-risk youth at a nonprofit organization in Maine, where his supervisor reported that he was performing well.

At the beginning of September, Enso staff discovered that the appellant was involved in an unauthorized romantic relationship with another Enso client, Candida Dephilippo — a practice that was against the program's rules. The appellant was informed that he would be discharged from the program if he continued the relationship. A few days later, he was discharged from the program for continuing the relationship.

Near the end of September, the appellant's probation officer referred him for a substance use disorder assessment at the counseling center from which the appellant previously had received mental health treatment. The appellant also tested positive for cocaine, which he later admitted to using. He completed the substance use disorder assessment and was recommended as a candidate for weekly treatment, but he missed his first appointment and never rescheduled it.

After his discharge from Enso, the appellant reported to his probation officer that he would temporarily reside at his place of employment, which had a residential facility. In October, however, the probation officer learned that the appellant was actually residing with Dephilippo in Augusta, Maine. According to the terms of the appellant's supervised release, he was required to seek permission to have contact with Dephilippo because she was a known felon. He never sought such permission, and his probation officer instructed him to cease contact with her.

Later that month, though, the appellant admitted to his probation officer that he was still living with Dephilippo, who was pregnant with his child. Due to Dephilippo's pregnancy, the probation officer granted the appellant permission to reside with Dephilippo, with the caveat that permission to have contact with her would be retracted if he resumed using illicit substances.

In November and December, the appellant tested positive for cocaine twice. Due to the appellant's continued use of cocaine, his probation officer instructed him to stop living with Dephilippo. Toward the end of December, the appellant tested positive again for cocaine, which he admitted to using, and informed his probation officer that he had not yet found alternative housing. The probation officer advised him that a petition for a summons would be filed to address these violations

and that continued use of illicit substances would result in a petition for a warrant being filed instead of a summons.

On January 15, 2023, the Augusta Police Department informed the appellant's probation officer that he had been arrested on charges of domestic violence and obstructing reporting of a crime. The arrest report alleged that after Dephilippo confronted the appellant about spending their household money on drugs, he repeatedly struck her in the face, stuck his fingers in her mouth, and pulled her hair when she tried to leave. According to the report, Dephilippo then convinced the appellant to take her to the hospital, where she passed a note to medical providers stating that he had assaulted her. The appellant later admitted to police that he had slapped her in the face.

Shortly thereafter, the probation office filed a petition to revoke the appellant's term of supervised release, alleging three violations of his supervised release terms: his testing positive for cocaine four times between September and December of 2022; his failure to relocate after his probation officer instructed him to move out of Dephilippo's home; and his assault on Dephilippo. On February 27, 2023, the district court held a final revocation hearing. The appellant admitted to all the charged violations, and the district court calculated a guideline sentencing range (GSR) of four to ten months, with thirty months of supervised release.

The government advocated for an above-guidelines sentence of eighteen months' incarceration with no supervised release to follow. The government argued that an upwardly variant sentence was appropriate because the appellant had received multiple "breaks" in the form of time-served sentences and chances to seek drug treatment, and yet he continued to use drugs and violate the terms of his probation. An eighteen-month sentence, the government argued, would serve the goal of specific deterrence.

The appellant urged a sentence of eight months. His attorney explained that the appellant's low IQ and impulsivity disorder made it unrealistic to "expect[] [from him] the kind of normalcy and compliance" that would typically be expected from an adult of his age (twenty-nine years old at the time of the hearing). The appellant's attorney also alleged that the appellant's assault on Dephilippo stemmed from the appellant's dismay over her use of heroin while pregnant.

In handing down the sentence, the district court stated that the probation office had exercised "Job-like patience" with the appellant and that "one of the only tools . . . that has not been tried, is prison for punishment's sake," which would "hopefully deter [the appellant] from a lifetime of this groundhog-day saga wherein [he] repeat[s] the same harmful conduct on a loop unabated and in the face of generous opportunities that many scores of federal defendants do not see." The district court

acknowledged "the particular challenges" that the appellant faced but "reject[ed] . . . any qualitative parsing of the nature of the assault" on Dephilippo. The court stated that it had "considered the 3553(a) factors, chief among them . . . the need to impose a sentence that corresponds to the seriousness of the offense, to provide just punishment for the offense, to protect the public from further crimes . . . , and to hopefully afford some measure of specific deterrence."

In the end, the district court sentenced the appellant to eighteen months' incarceration with no supervised release to follow. This timely appeal ensued.

## II

The appellant contends that his sentence was "substantively unreasonable because the district judge failed to explain why an upward variant was necessary or appropriate." Although the parties dispute whether the appellant's contention should be reviewed for abuse of discretion or for plain error, we leave that question unresolved because — under either standard of review — the government prevails. Favorably to the appellant, we review for abuse of discretion. See United States v. Bermúdez-Meléndez, 827 F.3d 160, 166 (1st Cir. 2016).

The test for the substantive reasonableness of a sentence is whether it "reflects 'a plausible sentencing rationale and a defensible result.'" United States v. Soto-Soto, 855 F.3d

- 8 -

445, 450 (1st Cir. 2017) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). Where, as here, a sentence is imposed following the revocation of a term of supervised release, 18 U.S.C. § 3583(e) guides the district court's exercise of discretion. See id.

Section 3583 counsels the court to consider sentencing factors such as the nature of the offense, the offender's history and characteristics, the need for deterrence, and the need to protect the public. See 18 U.S.C. § 3583(e) (incorporating by reference several of the sentencing factors outlined in 18 U.S.C. § 3553(a)). An upwardly variant sentence will generally be upheld if it "is anchored in a plausible, albeit not inevitable, view of the circumstances sufficient to distinguish th[e] case from the mine-run of cases." United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014).

Because the appellant only attacks the district court's explanation of its sentence and does not appear separately to argue that the outcome would be unreasonable regardless of its rationale, we focus on the "plausible sentencing rationale" element of the test for substantive reasonableness.[1] Soto-Soto, 855 F.3d at 450;

---

[1] As we have observed, "an adequate explanation for an upward variance and a plausible rationale for that variance are almost always two sides of the same coin." United States v. Valle-Colón, 21 F.4th 44, 50 (1st Cir. 2021); see United States v. Leach, 89 F.4th 189, 198 (1st Cir. 2023).

see United States v. Flores-Nater, 62 F.4th 652, 656-57 (1st Cir. 2023). We hold that the district court's rationale was plausible and its sentence was reasonable.

First, we disagree with the appellant's characterization of the district court's rationale as "merely list[ing] a variety of factors that it considered . . . without explaining its reason for selecting an upward variant." The district court clearly explained that, considering such things as the appellant's repeated violations of his supervised release terms and the multiple second chances afforded to him by the court and probation officer, an above-guidelines sentence was needed to "hopefully deter [him] from a lifetime of . . . repeat[ing] the same harmful conduct." We upheld an upwardly variant sentence premised on a similar rationale in Soto-Soto, another case in which an appellant's supervised release was revoked after repeated violations, including an incident in which he was charged with domestic violence. See 855 F.3d at 446-47, 451.

There, the court calculated a guideline range of five to eleven months and sentenced the appellant to two years' imprisonment (the statutory maximum). See id. at 448. In response to the appellant's claim of substantive unreasonableness, we explained that "the appellant's actions gave the district court ample reason to believe that only a substantial sentence would deter him from his wayward practices" and noted that "a high-end

- 10 -

guideline sentence would in all likelihood have carried with it a new supervised release term . . . and the appellant had given the court reason to believe that a new term of supervised release would be fruitless."  Id. at 450-51.  Here, as in Soto-Soto, the persistence of the appellant's previous supervised release violations was sufficient to "distinguish this case from the mine-run of cases."  Del Valle-Rodríguez, 761 F.3d at 177.

What is more, the appellant is incorrect in asserting that the district court "failed to explain why a guideline sentence . . . would not be adequate," as the district court highlighted the prior opportunities and leniency the appellant had received as well as his repeated supervised release violations and its evaluation of the need for specific deterrence.

Furthermore, this case is distinguishable from the two cases that the appellant primarily cites as instructive examples of upwardly variant revocation sentences that were imposed without sufficient rationale.  United States v. Reyes-Correa, 81 F.4th 1, 11-12 (1st Cir. 2023); United States v. Serrano-Berríos, 38 F.4th 246, 250 (1st Cir. 2022).  In Reyes-Correa, the district court supplied only "boilerplate language" to explain its 400 percent upwardly variant sentence and, when describing the factors relevant to the appellant's sentence, gave "a 'mere listing of the facts . . . , without emphasis on any particular circumstance,'" making it "'impossible to tell' why the court landed on a sentence

that quadrupled the guidelines sentencing range." 81 F.4th at 10-11 (alteration in original) (quoting United States v. Muñoz-Fontanez, 61 F.4th 212, 214 (1st Cir. 2023)). Moreover, we were unable to identify any circumstance that made the appellant's situation more egregious than simply a "case . . . about a person who is living with a substance use disorder." Id. at 13. In Serrano-Berríos, we found the sentencing rationale insufficient in part because the district court's explanation was unclear and subject to multiple interpretations, one of which would have been unsupported by the record. See 38 F.4th at 250.

Here, the district court's explanation of the appellant's sentence was unambiguous and consistent with the record. The district court emphasized the repetitiveness of the appellant's previous violations, the multiple second chances already provided to him, and the egregiousness of his latest violation for domestic violence as the main bases for the upward variance. Unlike Reyes-Correa, this is not a case in which it could plausibly be argued that there was little basis for an upward variance apart from conduct that could be considered par for the course for a person with a substance use disorder. See 81 F.4th at 13. Most notably, the appellant admitted to hitting Dephilippo, who was pregnant. The variance imposed here was also significantly less severe than the 400 percent increase at issue in Reyes-Correa. See id. at 10; see also United States v. Guzman-Fernandez, 824

- 12 -

F.3d 173, 178 (1st Cir. 2016) ("[T]he greater the variance, 'the more compelling the sentencing court's justification must be.'" (quoting Del Valle-Rodríguez, 761 F.3d at 177)).  For a variance of this extent, the district court's explanation was sufficient.

## III

We need go no further.  For the reasons elucidated above, the district court's sentence is

**Affirmed**.